IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Robert Smerling, | ) | |
| | ) | Case No. 12 C 50362 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Officer Christopher Dever, | ) | |
| Sgt. Espinoza, & Sgt. Michael | ) | Judge Philip G. Reinhard |
| Barczy | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendants Sergeant Espinoza and Sergeant Michael Barczy's motion for summary judgment [64] is granted. Defendants Espinoza and Barczy are dismissed from this case.

## STATEMENT-OPINION

On October 8, 2012, plaintiff Robert Smerling, a former inmate at the Dixon Correctional Center ("DCC"), filed a single count excessive force claim under 42 U.S.C. § 1983 against defendant Christopher Dever, a former correctional officer at the DCC. *See* [1]. In his complaint, plaintiff alleged Officer Dever physically assaulted him after performing "a shake down"[1] of his cell. *See* [1] ¶ 6. Plaintiff claimed the assault was unprovoked and alleged that two DCC sergeants, (later named defendants) Raymond Espinoza and Michael Barczy, witnessed the incident. Plaintiff claimed he suffered various injuries as a result of the incident and sought relief under Section 1983.

The procedural history in this case is extensive but relevant in the ultimate disposition of this matter. As a result, the court will summarize the procedural background to clarify what remains pending for the court's resolution.

---

[1]A "shake down" is a term used to describe a search of a prisoner's cell for contraband.

1

## A. PROCEDURAL BACKGROUND

Shortly after filing his initial complaint, plaintiff sent Officer Dever a waiver of service. This waiver was returned executed on January 1, 2013, but weeks passed without Dever answering the complaint or otherwise filing a response. *See* [12]. After Dever failed to appear at a scheduled status conference on February 1, 2013, plaintiff moved for default judgment. *See* [16]. In his motion, plaintiff alleged Dever had been terminated from his position as a correctional officer and his request for representation from the Illinois Attorney General's Office had been denied. Plaintiff claimed Dever had informed him of his intentions to obtain private counsel, but had not done so and had not responded to plaintiff's complaint. [16] at 2. Given his *pro se* status, Magistrate Judge P. Michael Mahoney entered and continued plaintiff's motion for default, and set a discovery hearing for March 13, 2013. *See* [18].

On March 13, 2013, Magistrate Judge Mahoney denied plaintiff's motion for default judgment. *See* [19]. At the discovery hearing, Magistrate Judge Mahoney acknowledged receipt of a letter from Dever and informed Dever that he had until April 9, 2013 to file a response to plaintiff's complaint. *See* [19]. On April 10, 2013, Dever filed his answer. *See* [21]. On April 24, 2013, the parties had a pretrial conference before Magistrate Judge Mahoney and a case management schedule was set. *See* [23].

On May 3, 2013, the case was transferred to Magistrate Judge Iain D. Johnston. *See* [25]. Shortly after the transfer, plaintiff filed a motion to compel and a motion for leave to file a second amended complaint. *See* [29]; [31]. In the motion to compel, plaintiff claimed Dever failed to produce any documents during discovery and failed to serve his Rule 26 disclosures. Magistrate Judge Johnston granted the motion to compel and ordered Dever to provide complete responses to plaintiff's discovery requests. *See* [33]. He also granted plaintiff's motion for leave to file a second amended complaint. *See id.*

In the second amended complaint, plaintiff added a failure to intervene claim against Sergeant Raymond Espinoza and Sergeant Michael Barczy. Plaintiff alleged Espinoza and Barczy were liable because they witnessed the altercation between plaintiff and Dever and failed to respond appropriately. *See* [34].

A few weeks after he filed the second amended complaint, plaintiff moved for default judgment against Officer Dever for a second time. In this motion, plaintiff claimed default was appropriate because Dever had disobeyed court orders with his continued failure to respond to plaintiff's discovery requests and his failure to appear at the last two scheduled court dates. *See* [37] at 2. Dever was given an opportunity to respond to the motion, but failed to do so. As a result, on August 19, 2013, this court entered a default against defendant Officer Dever and continued the case with respect to defendants Espinoza and Barczy. *See* [51]. In the court's order, it reserved judgment with respect to the damages against Dever until plaintiff's claims against the remaining defendants were resolved. *See id.*

Subsequently, plaintiff filed a third amended complaint. *See* [55]. In it, he added a failure to protect claim pursuant to Section 1983 against defendants Barczy and Espinoza. *See* [55].

Barczy and Espinoza timely answered the third amended complaint [57] and the parties have completed discovery. Upon completing discovery, defendants Barczy and Espinoza moved for summary judgment. *See* [64]. That motion is fully briefed and ripe for the court's review.

## B. LEGAL STANDARD

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## C. ANALYSIS

Defendants Barczy and Espinoza argue they are entitled to summary judgment with respect to plaintiff's failure to intervene and failure to protect claims. They contend they acted reasonably and responded appropriately when the altercation between Dever and plaintiff ensued. Barczy and Espinoza specifically point to the undisputed evidence that they removed plaintiff from the situation and ordered Dever to stop the attack and leave the area. The sergeants contend this evidence defeats both of plaintiff's claims.

Not surprisingly, plaintiff disagrees. He argues that summary judgment cannot be granted because there are disputed issues of fact and credibility determinations which make summary judgment inappropriate.

The court is cognizant of its obligation to construe the facts in the light most favorable to plaintiff, the non-moving party. *Schepers,* 691 F.3d at 913. As such, it will first set forth the undisputed facts, drawing all reasonable inferences in plaintiff's favor, and then apply those facts to plaintiff's Section 1983 claims.

*1. Undisputed Facts*

In the evening hours of October 8, 2011, plaintiff was in his cell at the DCC when correctional Officer Christopher Dever informed him that he was going to perform a "shake

down" of plaintiff's cell. [71] ¶ 8. Plaintiff was compliant as Dever began to search the cell for contraband. However, at some point during the shake down, a verbal altercation between plaintiff and Dever ensued. As the situation began to escalate, plaintiff asked Dever to call a lieutenant to monitor the situation. Dever made a call and minutes later Sergeants Barczy and Espinoza arrived at plaintiff's cell. [71] ¶ 9. Upon arriving, Sergeant Barczy asked Officer Dever to explain what had happened. As Dever began to tell his version of the story, plaintiff and Dever began to argue and exchange verbal insults. As a result, Sergeant Barczy separated the two individuals and placed plaintiff in handcuffs. [71] ¶ 10. Barczy instructed Officer Dever to follow him out of the cell to the control room down the hall.

After Barczy and Dever left the cell, Sergeant Espinoza asked plaintiff what had occurred. Plaintiff explained that he and Dever had exchanged verbal insults. He then asked Sergeant Espinoza whether he was going to be placed in segregation because of the incident. *See* [71] ¶ 11.

During this time, Sergeant Barczy walked with Officer Dever to the control room to get Dever's version of the events. [71] ¶ 12. After hearing his side of the story, Barczy called his supervisor (the major), to explain what had occurred. At some point during the conversation, the major asked to speak to Dever. Pursuant to his request, Barczy passed the phone to Dever and left the control room. Barczy then returned to plaintiff's cell and informed plaintiff he was going to be placed in segregation. [71] ¶ 13-14. Plaintiff was calm at this time and Sergeant Espinoza removed plaintiff's handcuffs to allow him to pack his belongings. *Id.*

While plaintiff was packing, Officer Dever returned to the cell and informed Sergeant Barczy that he had a phone call in the control room. [71] ¶ 14. Barczy then left plaintiff's cell and only Sergeant Espinoza, plaintiff and Officer Dever remained. [71] ¶ 15. At this time, plaintiff continued to pack his belongings. Minutes later, plaintiff and Dever began to once again exchange verbal insults. At this time, Sergeant Espinoza repeatedly instructed plaintiff to stop and instructed Officer Dever to leave the cell. [71] ¶¶ 15-16.

Dever did not listen to Espinoza's orders and instead suddenly shoved Sergeant Espinoza out of the way and began to physically attack plaintiff. He grabbed plaintiff's neck and shoved his face onto the lower bunk, pinning him down on the bed and pushing his head against the wall. [71] ¶ 17. Immediately after this occurred, Sergeant Espinoza yelled at Dever, "Get off him. Leave him alone. We got this." [71] ¶ 17; (quoting [66-1] at 15; Pl.'s Dep. at 54-57). Dever apparently did not listen as he remained on top of plaintiff. Plaintiff testified that Sergeant Espinoza then "tried to assist" Dever in getting plaintiff's arms out from underneath him to handcuff plaintiff. [66-1] at 15-16; Pl.'s Dep. at 57-58. Plaintiff stated that he was unsure as to how exactly he became handcuffed but was certain that "it was a sergeant that placed the handcuffs on [him]." [66-1] at 15; Pl.'s Dep. at 57.

At some point during the altercation, Sergeant Barczy returned to plaintiff's cell. When he returned, he ordered Officer Dever to leave the cell and go to the control room. Barczy then physically removed Dever from plaintiff. [71] ¶ 18. While Dever eventually left the cell, he did

4

not listen to Barczy's orders to report to the control room and instead remained in the hallway outside the cell. [75] ¶ 13. At this point, Sergeants Espinoza and Barczy assisted plaintiff off of the bed and began to lead him out of the cell. [71] ¶ 22.

As Barczy and Espinoza were leading plaintiff out of the cell, Sergeant Barczy instructed another officer to bring a transportation van to the exterior door so the sergeants could transport plaintiff to the segregation unit. [71] ¶ 23. The exterior door was four or five feet to the right of plaintiff's cell door and the control room was to the left of the plaintiff's cell door. Sergeant Barczy was standing to the right of plaintiff holding his arm while Sergeant Espinoza was standing directly behind plaintiff getting the key for the door ready as they waited for the exterior door to open. *See* [71] ¶¶ 24-25; [75] ¶ 15. Apparently, Officer Dever remained in the hallway behind Sergeant Espinoza as everyone waited for the door to open. [71] ¶ 24. Approximately ten seconds after Barczy, Espinoza, and plaintiff exited the cell Dever came up from behind plaintiff, grabbed the back of his neck and shoved his face into the door frame multiple times. [71] ¶¶ 27-29. At this point, Sergeant Barczy gave Dever multiple orders to stop and commanded Dever to leave plaintiff alone. [71] ¶ 28 (citing [66-1] at 20; Pl.'s Dep. at 75). Approximately thirty seconds after the altercation began, the exterior doors opened and the sergeants once again ordered Dever to leave. [71] ¶ 31 (citing [66-1] at 21-22; Pl.'s Dep. at 80-83). Officer Dever complied with these orders and Sergeants Barczy and Espinoza led plaintiff to the van which transported them to the segregation unit. [71] ¶ 31.

Upon arriving at the segregation unit, plaintiff complained of pain and requested medical attention. See [75] ¶ 21. He eventually saw a nurse, and later that evening an officer from internal affairs interviewed him about the incident and took pictures of the injuries he suffered on his face. [75] ¶ 22. Later, plaintiff learned he suffered nasal bone fractures. [75] ¶ 23. He filed at least one prison grievance against Barczy and Espinoza in addition to the instant suit. [75] ¶ 24. Officer Dever was criminally charged with felony aggravated battery for his attack on plaintiff and also for hitting Sergeant Espinoza. [75] ¶ 25.

## 2. *Failure to Intervene*

Plaintiff alleges these facts set forth a failure to intervene claim against defendants Espinoza and Barczy. He argues that Espinoza and Barczy are liable because they failed to take the appropriate action when Dever attacked plaintiff both inside the prison cell and outside the cell as the parties waited for the exterior door to open.

Espinoza and Barczy argue that they are entitled to summary judgment because they separated plaintiff and Dever and repeatedly ordered Dever to stop his attack on plaintiff. They claim their actions were reasonable given the circumstances.

"The Fourteenth Amendment imposes an affirmative duty on all law enforcement officials to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Moore v. Morales*, 445 F. Supp. 2d 1000, 1010

5

(N.D. Ill. 2006) (internal quotations and citations omitted). An inmate asserting a failure to intervene claim under Section 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer, must show that the officers had reason to know that excessive force was being used, and the officers had a " realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 324 F.3d 763, 774 (7th Cir. 2005 (quoting *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994)). The Seventh Circuit explains that a "realistic opportunity to intervene" may exist when an officer could have called for help, or when an officer could have cautioned the officer using excessive force to stop." *Rainey v. City of Chicago*, No. 10-C-07506, 2013 WL 941968 at *7 (N.D. Ill. Mar. 13, 2013) (citing *Abdullahi*, 423 F.3d at 774; *Yang*, 37 F.3d at 85).

In this case, it is undisputed that both Sergeant Barczy and Sergeant Espinoza did more than merely caution Dever to stop his use of force. They separated Dever and plaintiff when the verbal altercation began, repeatedly ordered Dever to stop his physical attacks, reported the incident to their supervisors, requested a transportation van for plaintiff to leave premises, and traveled with plaintiff to the segregation unit. In fact, Barczy even physically removed Dever from plaintiff when he arrived to plaintiff's cell and saw Dever had pinned plaintiff on the bed. *See* [71] ¶ 18. Because of this, the court finds plaintiff's failure to intervene claim fails as matter of law. The court finds the following evidence particularly relevant in reaching this conclusion.

First, it is undisputed that when Dever first became physical with plaintiff inside the cell and pinned him on the lower bunk, Sergeant Espinoza immediately stated, "Dever, get off of him. We got this." Pl.'s Dep. at 54-55; [66-1] at 15. Next, plaintiff testified that when Dever pushed plaintiff's head into the wall, Espinoza again ordered Dever to "Get off him [plaintiff]. Leave him alone. We got this." Pl.'s Dep. at 57; [66-1] at 15. With respect to Barczy, plaintiff admits that when Barczy returned to the cell and observed Dever on top of plaintiff Barczy ordered Dever to "leave the cell" and "removed Officer Dever from [p]laintiff." [71] ¶ 18. It is also undisputed that the officers responded in a similar manner when Dever attacked plaintiff for a second time outside the cell. Plaintiff admits that the second assault occurred approximately ten seconds after plaintiff exited his cell with Espinoza and Barczy and admits that when Dever came up from behind plaintiff and grabbed his neck, Barczy "gave Officer Dever multiple orders to stop and leave [p]laintiff alone." [71] ¶ 28-29. Finally, plaintiff admits both sergeants repeatedly ordered Dever to go back into the cell house. [71] ¶ 31.

All of these undisputed facts cause the court to conclude that plaintiff cannot demonstrate that the sergeants failed to intervened and are liable under Section 1983. While plaintiff cites *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) as support, the court finds the facts in that case readily distinguishable from the one at bar.

In *Yang*, the Seventh Circuit held that a district court erred in finding that an officer's inaction did not make him liable under Section 1983. *Id.* at 286. There, two officers responded to a potential burglary at a shoe store and a confrontation arose between the store owner and one of the officers. *Id.* at 283. When the officers began to leave, the store owner allegedly tried to

prevent them from doing so and one of the officers shoved the store owner out of the way so he could get in the driver's seat of his squad car. The other officer said nothing and proceeded to the passenger seat of the vehicle. *Id.* at 283-84. The store owner then tried to prevent the two officers from driving away by gripping onto the open driver's side door. Rather than asking the owner to remove himself from the car, the officer in the driver's seat began to drive in a fast and reckless manner in an attempt to throw the store owner off of the vehicle. *Id.* at 284. The officer in the passenger seat sat idly and "did not call the sergeant or attempt to stop Officer Brown in any way." *Id.* While the district court found the passenger officer was not liable under Section 1983, the Seventh Circuit disagreed and found remand necessary since the officer had several opportunities to act and could have "called for a backup, called for help, or at least cautioned Officer Brown to stop." *Id.* at 285.

It is axiomatic that the facts here are unique from *Yang*. Sergeants Barczy and Espinoza did not merely sit and standby as Dever levied his physical attacks on plaintiff. Instead, they repeatedly ordered Dever to stop his use of force and leave plaintiff alone. *See supra*. While the court is cognizant that the Seventh Circuit has held that failure to intervene claims generally "implicate questions of fact for the jury," to decide whether an official had sufficient time to intervene or was capable of preventing harm (*Abudllahi*, 423 F.3d at 774), in this case it is undisputed that the sergeants intervened immediately when Dever began to use excessive force.

Under *Yang v. Hardin*, a plaintiff asserting a failure to intervene claim against a standby officer must demonstrate, (among other things), that the standby officer had a realistic opportunity to intervene and failed to do so. 37 F.3d at 282. The Seventh Circuit has made clear that a realistic opportunity may exist if the officer "could have called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abudlahi*, 423 F.3d at 774. The sergeants here separated Dever and plaintiff when the verbal altercation began, repeatedly ordered Dever to stop his physical attacks, at one point physically removed Dever from plaintiff, reported the incident to their supervisors, requested a transportation van for plaintiff to leave the DCC expeditiously, and traveled with plaintiff to the segregation unit. These facts do not demonstrate that the sergeants failed to intervene. As such, the court grants defendants Barczy and Espinoza's motion for summary judgment on count I.

## B. Failure to Protect

Count II of the third amended complaint purports to assert a failure to protect claim under the Eighth Amendment. *See* [55] ¶ 27. Plaintiff alleges Sergeants Barczy and Espinoza are liable because they "had actual knowledge or reasonably should have had knowledge of the risk posed to [p]laintiff's safety by allowing [d]efendant Dever to remain in [p]laintiff's vicinity[,]" and were deliberately indifferent to this risk. [55] ¶¶ 23-24. Plaintiff contends Barczy and Espinoza's actions and/or inactions were "intentional, willful, and wanton" and violated his Eighth Amendment rights under Section 1983. [55] ¶ 26.

7

Barczy and Espinoza argue they are entitled to summary judgment with respect to count II. First, they claim that plaintiff's failure to protect claim is not actionable because the assailant in this case was a correctional officer and not an inmate. Alternatively, Barczy and Espinoza contend they are entitled to summary judgment even if the claim is actionable because plaintiff cannot establish a *prima facie* case.

The Supreme Court has held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To succeed on a failure to protect claim under the Eighth Amendment, a plaintiff must establish that he was incarcerated under conditions which posed a substantial risk or threat of serious harm and that the defendants acted with "deliberate indifference" to that risk or threat of serious harm. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999). In other words, the defendant must be subjectively aware of the risk and disregard it. *Gidarisingh v. Pollard*, No. 13-3156, 2014 WL 3511697 at *3 (7th Cir. July 17, 2014) (citing *Farmer*, 511 U.S. at 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)). A defendant is subjectively aware of a serious risk of attack if an inmate communicates a specific and credible danger. *Id.* (citations omitted).

Typically, a prisoner asserts a failure to protect claim against a correctional officer when the prisoner suffers an attack from a fellow inmate and the correctional officer failed to take the appropriate action to prevent the attack. *See id.*; *see also Dale*, 548 F.3d at 569. In these instances, the prisoner must demonstrate that the defendant correctional officer knew there was a substantial risk that those who attacked plaintiff would do so, and failed to take any action. *Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). To prevail, the plaintiff must establish that the prisoner official was "both [] aware of the facts from which the inference could be drawn that a substantial risk of harm exists and also draw that inference." *Farmer*, 511 U.S. at 837.

Barczy and Espinoza first argue that plaintiff's failure to protect claim is not actionable because plaintiff was attacked by an officer, not an inmate. They contend the lack of case law with similar facts suggests that a failure to protect claim is not actionable if the assailant is an officer.

Recently, in *Ward v. Hoffman*, No. 14-CV-00509-MJR, 2014 WL 2442657 at *3 (S.D. Ill. May 30, 2014), a district court expressly held that the duty to protect "extends to the protection of prisoners from the excessive use of force by other officers." *Id.* (citing *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang*, 37 F.3d at 285). However, the Seventh Circuit cases relied upon by the court in *Ward* do not expressly hold that a duty to protect extends to the protection of prisoners from the use of force by other officers. That said, it is unnecessary to resolve this issue, as even if such a duty to protect exists in this context, the claim here fails as a matter of law.

The Seventh Circuit has held that a prison official will be liable for failing to protect an inmate when an inmate suffers an attack only if the prison official "effectively condones the

attack by allowing it to happen." *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Negligence and even gross negligence is insufficient to establish a failure to protect claim. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Instead, the prison official's indifference must be deliberate.

Plaintiff contends he has demonstrated that Barczy and Espinoza were deliberately indifferent to protecting him from Dever. He first points to the evidence that Barczy and Espinoza had heard a rumor that Dever had been involved in a prior altercation with an inmate and claims this should have put Barczy and Espinoza on notice that an attack would occur. However, the fact that Barczy and Espinoza had previously heard a rumor about Dever regarding an incident completely unrelated to plaintiff hardly suggests there was a possibility, let alone a "strong likelihood" that Dever would attack plaintiff. *See Pinkson v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (stating that failure to protect claims require a plaintiff to show that there was a "strong likelihood rather than a mere possibility that violence will occur."). Thus, the court does not find this evidence indicates Barczy and Espinoza acted with deliberate indifference.

Plaintiff also claims he has demonstrated that defendants were deliberately indifferent when they walked plaintiff out of the cell while Dever was still in the hallway. He points to his deposition as evidentiary support. At his deposition, plaintiff testified that immediately before Dever attacked plaintiff for a second time, plaintiff and Dever were exchanging insults and Dever stated that "he'll find [plaintiff] and finish [him] off." Pl.'s Dep. at 70; [66-1] at 19. Plaintiff contends this is evidence that Barczy and Espinoza had actual knowledge that Dever was going to attack plaintiff and were deliberately indifferent when they walked plaintiff out of the cell in Dever's presence.

The court does not find this evidence indicates that a second attack was forthcoming and Barczy and Espinoza were deliberately indifferent to it. Instead, Dever's statements about coming to "find" plaintiff suggest that Dever would search for plaintiff at some point in the future. While it may have been negligent for Barczy and Espinoza to have walked plaintiff out of the cell in the same vicinity as Dever, the record does not suggest that the sergeants "effectively condone[d]" the second attack Dever lodged on plaintiff or otherwise "allow[ed] it to happen." *Santiago*, 599 F.3d at 756. It is undisputed that Barczy was standing directly to the right of plaintiff holding his arm and Espinoza was standing behind him as the three men were walking toward the exterior door of the DCC. *See* [75] ¶ 15. It is also undisputed that Dever attacked plaintiff about ten seconds after plaintiff had left the cell and immediately after the second attack began Barczy gave Dever multiple orders to stop and leave plaintiff alone. [71] ¶ 28. There is simply no evidence in the record that Barczy and Espinoza had actual knowledge that Dever was going to physically attack plaintiff a second time and were deliberately indifferent. *See Santiago*, 599 F.3d at 756-57. Accordingly, the court concludes plaintiff is unable to establish a failure to protect claim under the Eighth Amendment.

9

It is worth mentioning that plaintiff's reliance on *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002) is misplaced. While plaintiff contends *Peate* supports his position that summary judgment should be denied, the facts in that case are distinguishable from those here.

In *Peate*, the plaintiff was in the prison yard when suddenly another inmate crept up from behind him and struck him a laundry bag full of rocks, bricks, and cement. *Id.* at 881. Allegedly, the two inmates fought for several minutes until the defendant officer broke up the fight, confiscated the laundry bag weapon and separated the two inmates. *Id.* However, somehow after this occurred, the assailant inmate regained control of the laundry bag and began to attack the plaintiff a second time. *Id.* Apparently, a few witnesses stated that the defendant officer gave the weapon back to the inmate while others stated that the inmate stole it from the officer. Regardless, a second fight ensued and the prisoner later sued the defendant officer for failure to protect. When the officer moved for summary judgment, the district court granted the motion and found the record void of any evidence which gave rise to a failure to protect claim. *Id.* at 882. The Seventh Circuit disagreed. It found the affidavits from several witnesses who claimed the defendant officer returned the weapon to the assailant inmate established an issue of fact regarding the defendant officer's actions immediately before the second attack. Specifically, the Seventh Circuit concluded that if the defendant officer returned the weapon to the assailant inmate then this could "demonstrate a disregard for [plaintiff's] safety, given the nature of the weapon . . .[.]" *Id.* at 883.

The same cannot be said here. Even when the court accepts plaintiff's version of the facts, there is nothing in the record to suggest that Barczy and Espinoza had actual knowledge or acted with deliberate indifference as they were escorting plaintiff out of the DCC and Dever levied a second attack on plaintiff. Indeed, the record indicates Barczy and Espinoza took precautionary measures when they escorted plaintiff out of the cell together and Barczy held plaintiff's arm and called a transportation van in an attempt to make his departure as seamless as possible. Accordingly, the court concludes plaintiff cannot establish that Barczy and Espinoza acted with deliberate indifference. As such, they are entitled to summary judgment with respect to count II.

For the reasons stated above, defendants Michael Barczy and Raymond Espinoza's motion for summary judgment [64] is granted. Plaintiff should schedule a damages hearing for his claim against Dever to complete a resolution of this case.

Date: 8/07/2014      ENTER:

*Philip G. Reinhard*
United States District Court Judge

Notices mailed by Judicial Staff. (LC)